Thomas E. PROCTOR, 2nd, et al.

v.

The SAGAMORE BIG GAME CLUB,
The Sylvania Corporation, United
Natural Gas Company, et al.

Civ. A. No. 432–Erie.

United States District Court
W. D. Pennsylvania.

Nov. 13, 1956.

John C. Youngman, Williamsport, Pa., Herbert R. Carroll, Pittsburgh, Pa., John Cartwright, Ridgway, Pa., for plaintiffs.

Frampton & Courtney, Oil City, Pa., H. P. Boarts, Kittaning, Pa., Gifford, Graham, MacDonald & Illig, Erie, Pa., for defendants.

WILLSON, District Judge.

This case is before the court on the motion of plaintiffs for re-argument. It is appropriate to briefly review this matter: the case was originally filed with the clerk of this court in Pittsburgh and received a Pittsburgh number, Civil Action No. 12726. The complaint names twenty-two defendants. The litigation involves the ownership of the natural gas in 1,100 acres, Warrant No. 5343, situate in Elk County, Pennsylvania. Plaintiffs seek a money judgment of over three million dollars against all defendants. The principal corporate defendants, that is, The Sylvania Corporation and United Natural Gas Company, are Pennsylvania corporations with their principal offices in Oil City, Venango County, Pennsylvania in this district. The case has been before me at both Pittsburgh and Erie on defendants' motions to dismiss and on the present motion. D.C., 128 F.Supp. 885. The individual defendants, some of whom reside in Pennsylvania and some of whom reside outside of Pennsylvania, are members of the Sagamore Big Game Club, which corporation, defendants say, owned the gas rights prior to the drilling of and withdrawal of the gas from the land by the other corporate defendants.

In connection with this proceeding, although this is a diversity case, it is noticed that venue as to the non-resident individual defendants is based upon the provisions of 28 U.S.C.A. § 1655, which authorizes jurisdiction over the property only with the authority of the court limited to in rem relief.

When the court was in session in Erie in March of 1956, one of the attorneys for defendants presented me with an order as follows:

"Now March 19, 1956, it appears that the matter to be litigated in the above entitled cause involves a defendant or defendants residing in Venango County, it is hereby ordered that in conformity with rule 5 I (f) the complaint in this cause be given an Erie number by the Clerk and that this cause be placed upon the Erie calendar."

As Herbert R. Carroll, Esq., attorney for the plaintiffs, had not been notified of the presentation of the order, the court personally called him by telephone and informed him of the submission of the proposed order. On being informed that counsel for the plaintiff strenuously opposed the granting of the order, at my direction the matter was placed upon the argument list, to be heard by me on the May 1956 argument list for Pittsburgh. After argument on May 23, 1956, I entered an order directing that the case be redocketed, striking out the Pittsburgh

number and directing that the clerk give this case an Erie number and that it be placed upon the November 1956 trial calendar for trial at Erie. The present motion to re-argue is based upon plaintiffs' dissatisfaction with the order of May 23, 1956.

First, plaintiffs complain that as no notice of the original proposed order to transfer the case from the Pittsburgh to the Erie calendar was given them, the court's order of last May 23rd should not have been entered and the court should now simply revoke that order as no notices of it were given in conformity with Rule 5(a) of the Rules of Civil Procedure, 28 U.S.C.A. and Rule 4(a) of this court. Both of these rules refer to notices of motions, serving of copies, etc. upon opposing parties. The court understands that counsel for defendants, in presenting the proposed order to docket the case at Erie, assumed that it was a perfunctory or pro forma matter. In any event, plaintiffs are not prejudiced in any way by lack of notice in the first instance, because of the court's action as outlined herein. However, it is this court's view that no notice of the proposed order was necessary as the motion is covered by Rule 4(a) 1, which relates to ex parte motions. But that need not be and is not decided in. this matter, because the case came up on the regular argument list with notice to all concerned.

The complaint in this case was filed on September 22, 1954. At that time, Rule 5(i) of this court, adopted June 13, 1952, read as follows:

"(i) The judge to whom a case is assigned where the defendant resides in the County of Crawford, Clearfield, Clarion, Elk, Erie, Forest, Jefferson, Mercer, McKean, Venango or Warren, shall place such case upon the trial list for trial at Erie, where the same shall be tried unless the parties thereto, subject to the approval of a judge, stipulate that the same may be tried at Pittsburgh."

On June 30, 1955, this court adopted new rules so that Rule 5 I(f) now reads:

"Where it appears from the complaint, petition or other pleading that the matter to be litigated involves a defendant residing in one of the following counties: Crawford, Elk, Erie, Forest, McKean, Venango or Warren, the Clerk shall give such complaint, petition or other pleading an Erie number and thereafter such case shall be placed upon the Erie calendar of the court; all other cases or matters for litigation shall be docketed and disposed of at Pittsburgh."

As the court understands plaintiffs' position, it is that plaintiffs are entitled to have the present issue decided upon the rule as it read on June 13, 1952, first quoted above. Plaintiffs' present position is perhaps best understood from an excerpt from their brief, which reads:

"If the instant plaintiffs had wanted to assume the risk of local influence, they could have brought their action in the state court in Elk County. But that county is the virtual heartland of the business activity of the defendants for whose benefit the order of May 23, 1956, now being reconsidered, was made, namely, United Natural Gas Company and The Sylvania Corporation. Seeking a forum where there was minimal local influence or none, and having regard to the nature of their case, they turned to this court. They observed that the statute gave them a choice of filing at Pittsburgh or at Erie. They observed too, that the local rule then in effect applied where there was only one defendant and they proposed to proceed against twenty-two, only two of which were in any county designated by that rule. They knew that Erie was an area of influence not only of the two named corporate defendants, but also of their sister companies, and of the parent of all of them, another

defendant, National Fuel Gas Company. Opposed to all of this was the fact that fourteen individuals were residents of the Pittsburgh area. The plaintiffs balanced the apparent risks of the spheres of influence and concluded that of any of the places where they were entitled to sue, they would encounter in Pittsburgh the least risk of presenting their case in an atmosphere of influence and that in Pittsburgh were they most likely to find an uninfluenced jury. Relying upon their right to do so under the law, and even under the local rule then in effect they chose Pittsburgh. The defendants seek to have this right denied and thus far, have made substantial progress in that direction.

"The only ostensible ground for transferring this case from Pittsburgh to Erie and, to this point, the only one advanced by the defendants, is the present local Rule 5(f) of June 30, 1955. It is a rule which is tailor-made for their position and is wholly different from Rule 5(m) of March 16, 1951 and Rule 5(i) of June 13, 1952. Each of those rules, by its content, necessarily presupposed the fact that there was only one defendant in a case to which it applied. The present rule 5 I(f) of June 30, 1955, refers to *a* defendant, obviously meaning one of several. And even though it is the result of a change of rules, relating to the plaintiffs' substantial right in the course of the litigation, the defendants insist that it is applicable because the two defendants residing in Venango County are supposedly more nearly financially responsible than the other twenty. Predicating a transfer upon such a ground, in extinguishment of the plaintiffs' substantial right to their venue, is absurd."

It is thus apparent that plaintiffs claim an absolute privilege to select as between Pittsburgh and Erie the place of trial in this district. It is noticed at this point that there is no territorial division in the Western District of Pennsylvania as between Pittsburgh and Erie. The Act of Congress simply provides, 28 U.S.C.A. § 118, that court shall be held in this district at both Pittsburgh and Erie. It is this court's view that the trial of any case can be held with equal justice to all parties either at Pittsburgh or at Erie and regardless of the character of the litigation. Plaintiffs present their issue as though it was a matter of statutory venue. However, in the view of this court it is not an issue relating to venue in any way. The Act of Congress of March 3, 1911, 36 Stat. 1123, which fixed the counties comprising the Western District as it exists today, as amended on March 5, 1942, 56 Stat. 132, provided:

"The clerk shall place all cases in which the defendants reside in the counties of said district nearest Erie upon the trial list for trial at Erie, where the same shall be tried, unless the parties thereto stipulate that the same may be tried at Pittsburgh."

However, the amendment to the Act of June 25, 1948, 62 Stat. 888, struck from the statute all reference as to which cases were to be tried at Erie or Pittsburgh, leaving the statute in its present form, that is, as heretofore quoted that court shall be held at Pittsburgh and at Erie. It was during this time that the Federal Rules of Civil Procedure were being formulated and the judicial code revised. 28 U.S.C.A. § 2071, relating to the rule making power generally of the court, as amended May 24, 1949, provides as follows:

"The Supreme Court and all courts established by Act of Congress may from time to time prescribe rules for the conduct of their business. Such rules shall be consistent with Acts of Congress and rules of practice and procedure pre-

scribed by the Supreme Court * * * ."

■ This judicial district comprises twenty-five counties in the western portion of Pennsylvania. Congress has now left it to this court to determine by appropriate rule the division of the business as between Pittsburgh and Erie. On March 16, 1951, the rules of court were revised and the rule relating to the division of business between Erie and Pittsburgh as then adopted is substantially the same as the present rule. Rule 5(m) of the 1951 rules provided:

"The Clerk shall place all cases in which defendants reside in the Counties of Crawford, Elk, Erie, Forest, McKean, Venango and Warren, upon the trial list for trial at Erie, where the same shall be tried, unless the parties thereto stipulate that the same may be tried at Pittsburgh."

It is noticed that the 1951 rule provided that defendants residing in any one of seven counties would have their cases tried at Erie. The 1952 amendment enlarged the Erie area by adding Jefferson and Mercer Counties. The 1955 rule went back to the 1951 rule in that Jefferson and Mercer Counties were removed from the Erie trial area. It is to be recalled that the Act of Congress of March 11, 1911, in revising the districts of Pennsylvania, directed that court in the Western District be held at Pittsburgh and Erie at least twice each year. The latter provision has been altered in the Judicial Code, 28 U.S.C.A. § 138, which now provides:

"The times for holding regular terms of court at the places fixed by this chapter shall be determined by rule of the district court."

■ Thus the rules mentioned are simply the administrative or housekeeping rules of the court and have no impact whatsoever upon the venue sections of the judicial code. Historically this court has provided by rule that when a defendant or defendants reside in one of the counties in the northern area of the district, Erie is the place of trial. Under the present rule there may be instances in the event of several defendants, some living in the northern counties and some living in the Pittsburgh area, where it is a hardship to try the case at Erie. If and when a situation of that kind arises, then by analogy to the rule as to transfer of cases from one district to another, a judge of the court could and should direct an appropriate place of trial. Such a case, however, is not the instant one before me. No defendant in this case is complaining of the docketing of the case at Erie. Plaintiffs are complaining that they selected this forum with a view to trying the case at Pittsburgh under the 1952 rules. If so, then they were subject to an order of the judge placing the case upon the trial calendar for Erie. If the plaintiffs would rather have this issue decided under the 1952 amendment, then they may have it their way, but they do not prevail because the judge writing this opinion has by order directed the case be placed upon the Erie trial calendar.

Plaintiffs in their brief, however, indicate the real reasons why they insist that the case be tried at Pittsburgh. They say they do not wish to assume the risk of local influence at Erie, which is alleged to exist in favor of the defendants, or some of them.

■■ The court has not and will not, in this decision consider the proposition advanced by plaintiffs which by inference at least is to the effect that they cannot receive a fair trial in Erie. It is noticed on this point that at various times some Pittsburgh attorneys have indicated to this particular judge that they prefer to try cases at Pittsburgh rather than Erie because in general verdicts are larger in Pittsburgh than in Erie. Such reasons are not in any wise to be considered in ruling upon this issue. Plaintiffs' counsel indicates in his brief and has also stated at argument that this court is biased and prejudiced in favor of the

present Rule 5 I(f). The word "prejudice" is rather strong as an indication of this court's view of Rule 5 I(f). However, this particular judge does believe in Rule 5 I(f) and also believes in carrying out the provisions of all the rules of court. As long as the Act of Congress requires that trials shall be held in Pittsburgh and Erie, this court must adopt reasonable rules for division of trial work between the two places. Rule 5 I (f) was, of course, promulgated by the unanimous action of all of the then existing judges of this bench and certainly was within the discretionary powers of the court in view of 28 U.S.C.A. § 2071.

The motion to revoke and set aside the order of this court entered May 23, 1956, will be denied.